**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 25-cv-00391-RMR-NRN

LEGACY PARTNERS, LLC;
KIRK ELLIOTT PhD PRIVATE ADVISORS, LLC;
ASHLEY KUNKLE, LLC;
THE MODERN CLASSIC, LLC;
A&N INVESTMENTS, LLC;
KIRK-ELLIOTT;
ASHLEY KUNKLE;
AARON WEBB; and
RILEY CANADA,

Plaintiffs,

v.

TERAH OTT;
FTM WEALTH, PLLC; and
FTM WEALTH LLC,

Defendants.

---

TERAH OTT;
FTM WEALTH, PLLC; and
FTM WEALTH LLC,

Counterclaimants,

v.

LEGACY PARTNERS, LLC; and
KIRK ELLIOTT

Counterclaim Defendants.

---

**ORDER REGARDING MAGISTRATE JUDGE RECOMMENDATION**

---

This matter centers around an agreement between Plaintiffs Kirk Elliott, Ashley Kunkle, Aaron Webb, and Riley Canada ("Principals") and Defendant Terah Ott. Principals sought legal advice from Defendant Ott on the corporate and tax structure of their growing business. Principals allege Defendant Ott's tax strategy was unlawful, cheated them out of millions of dollars, and exposed them to tax penalties. After Plaintiffs filed their Third Amended Complaint, ECF No. 123, Defendants filed their Motion to Dismiss the Third Amended Complaint for Lack of Subject Matter Jurisdiction ("Motion"), ECF No. 146.[1] Magistrate Judge Neureiter entered a Recommendation on August 5, 2026, addressing Defendants' Motion to Dismiss and recommending the motion be denied. ECF No. 171. Defendants filed an objection to the Recommendation, ECF No. 179, and Plaintiffs filed a response to the objection, ECF No. 183.

Additionally, Defendants have filed a Motion to Consolidate Cases and for Amended Scheduling Order, ECF No. 176, and Plaintiffs have filed a Motion to Voluntarily Dismiss Riley Canada, Aaron Webb, the Modern Classic, LLC and A&N Investments, LLC, ECF No. 181. The Court has received and considered the Recommendation, the parties' additional motions, the record, and the pleadings. While the Court agrees with the majority of the Recommendation's legal analysis, the Court respectfully comes to a different conclusion and grants Defendants' Motion to Dismiss.

[1] Plaintiffs filed a response to the Motion to Dismiss, ECF No. 155, and Defendants replied, ECF No. 156. Plaintiffs then filed a supplemental response, ECF No. 161, and Defendants filed a supplemental reply, ECF No. 162.

## I. BACKGROUND

This case involves several entities and their individual members. Although the central dispute revolves around whether complete diversity exists, the Court will provide background on the history between the parties. Principals sought legal advice around the corporate and tax structure of Defendant Kirk Elliott's business helping clients acquire precious metals. ECF No. 1 ¶ 17. In 2022, Principals learned Defendant Terah Ott ("Defendant Ott") offered such legal services and reached out to her. *Id.* ¶¶ 18-19. Defendant Ott and her law firm, FTM Wealth, represented that they had a valuable strategy for reducing collective Plaintiffs' tax liability. *Id.* ¶ 19. Plaintiff Legacy Partners was formed to pursue the strategy and entered into an engagement agreement with FTM Wealth on December 28, 2022. *Id.* ¶¶ 27-28. Ultimately, Plaintiffs terminated the engagement agreement on August 19, 2024. *Id.* ¶ 43. Legacy Partners sought all the information and documents related to Defendants' legal advice and services rendered under the engagement agreement, but Defendants refused on the grounds that the information was confidential, proprietary, and trade secrets. *Id.* ¶ 44. In response, Plaintiffs initially filed this suit against Defendant Ott and FTM Wealth, PLLC on February 5, 2025, alleging breach of contract, professional malpractice, breach of fiduciary duty, fraudulent inducement, negligent misrepresentation, civil conspiracy, and declaratory judgment. *Id.* at 10-16. Later, on April 17, 2025, Plaintiffs added FTM Wealth, LLC as a defendant. ECF No. 45.

At this juncture, the central dispute is whether complete diversity exists. As Defendants indicate in their objection, background information around these individuals

is "imperative to the citizenship analysis." ECF No. 179 at 4. The parties do not dispute that Plaintiffs are each a citizen of Colorado. ECF No. 39. They also agree that the Ott children have the same domicile as their parents. ECF No. 161 at 3; ECF No. 162 at 2-3. The dispute is whether Defendant Terah Ott and Dr. Nathaniel Ott ("Dr. Ott") were citizens of Colorado or Texas at the time Defendants FTM Wealth LLC and FTM Wealth, PLLC were added as parties to the case. At this juncture in the case, Defendants contend that Defendant Ott and her husband are citizens of Colorado, despite the fact that Defendant Ott, claimed to be a citizen of Texas in several pleadings. Of course, if the Defendants are found to be citizens of Colorado, this defeats complete diversity of citizenship of the parties, and this Court must dismiss the action for lack of subject matter jurisdiction.

Doctor and Defendant Ott have owned their home at 5720 Rustic Knolls Drive, Boulder, Colorado 80301 since 2020. ECF No. 156 at 8. Doctor Ott works as an independent contractor physician, and his role requires periodic travel to Texas to support emergency departments in remote locations. *Id.* at 4; ECF No. 156-1 at 9. He has worked with Flint Medical Staffing since approximately 2018. ECF No. 156-1 at 9. The Chief Executive Officer ("CEO") of Flint Medical Staffing and its sister company, Concord Medical Group, is "aware that Dr. Ott resides in Colorado and commutes to [the] facilities in Texas, as he has done since approximately March 2023." ECF No. 156-1 at 9. The CEO explains that this arrangement "is not unique" and that both Concord Medical Group and Flint Medical Staffing "maintain contracts in numerous states across the United States" and "routinely staff these facilities with physicians who travel across state lines on a regular basis to meet the needs of [their] clients and patients." *Id.*

Doctor and Defendant Ott, as well as their children, lived in Boulder between August 2020 and February 2022, before moving to Texas for a period of time. ECF No. 156 at 5. In March 2023, the family moved back to Boulder, but Dr. Ott's military service required him to spend time in Hawaii and Arizona. *Id.* Between October 2023 and July 2024, Dr. Ott was stationed in Hawaii but residing in Boulder in a home purchased with Defendant Ott. ECF No. 146-1 ¶ 4. In July 2024, he was appointed commander of the 610th Command and Control Squadron in Tucson, Arizona. *Id.* ¶ 5. During that Arizona tour, Dr. and Defendant Ott purchased a home in Tucson. *Id.* However, Dr. Ott claims he never intended to reside indefinitely in Arizona or Hawaii. *Id.* ¶ 6. The Ott family chose not to repeatedly change their mailing address as they evaluated where they would "permanently" live after Dr. Ott's full-time military service tours were complete. ECF No. 156 at 5. During this period of relocation, Dr. Ott used a Texas address on tax filings. ECF No. 156 at 4; ECF No. 155-1 at 44. He has been a registered voter in Texas since December 7, 2017, and his current voter registration is valid and active. ECF No. 155-1 at 28. His vehicles are also registered to Texas. ECF No. 155-1 at 30, 45-50.

In April 2023, Dr. Ott underwent a surgical procedure in Boulder. ECF No. 156-1 at 28. In October 2023 and July 2024, Dr. Ott received orders from the Air Force regarding active-duty tours at his Colorado address. ECF No. 156 at 6; ECF No. 156-1 at 10, 14, 16. He also received his military 2025 Form W-2 and correspondence from the Department of Veteran Affairs at his Boulder home. ECF No. 156 at 6; ECF No. 156-1 at 18-19. In December 2024, Defendant Ott and the children moved back to their home in Boulder, Colorado, and have continued to reside there since. ECF No. 146-1 ¶¶ 7-9. The

Ott children have been continuously enrolled in Colorado schools since January 2025. ECF No. 156 at 8-9. On November 17, 2025, Dr. Ott renewed his Texas driver's license after he misplaced his previous one and needed a replacement in order to travel for his work. ECF No. 155 at 2; ECF No. 156 at 7.

Like her husband, Defendant Ott is also registered to vote in Texas. ECF No. 161-1 at 11. She, too, has a Texas driver's license, which was issued on June 30, 2022. ECF No. 161-1 at 15. In prior filings in this case, she represented that she was a citizen of Texas. ECF No. 161-1 at 20-21. At the time, she believed that she was a citizen of Texas, because she owned homes in both Texas and Colorado. ECF No. 162-1 at 6.

## II. LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

In the Motion, Defendants present a factual attack on subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction." *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Muscogee (Creek) Nation v. Okla. Tax Comm'n.,* 611 F.3d 1222, 1227 n.1 (10th Cir.2010)). In resolving such an attack, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995)). Instead, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citing *Holt*, 46 F.3d at 1003). Plaintiffs retain the ultimate burden of establishing jurisdiction by a preponderance of the evidence.

## III. ANALYSIS

### A. Procedural History

This case was initiated on February 5, 2025. ECF No. 1. Since then, Magistrate Judge Neureiter has held several hearings to resolve discovery-related and other disputes. ECF No. 117 (discovery hearing); ECF No. 152 (status conference); ECF No. 157 (motion hearing). On February 18, 2026, Magistrate Judge Neureiter held a motion hearing regarding Defendants' Motion to Dismiss. ECF No. 157. In order to get to the bottom of the diversity analysis, Magistrate Judge Neureiter ordered Defendants to file supplemental corporate disclosure statements and permitted the parties to file supplemental response briefs on the topic of jurisdiction. *Id.* Defendants filed their corporate disclosure statements on February 23, 2026. ECF Nos. 158-60. Additionally,

Plaintiffs filed their supplement to the Motion to Dismiss briefing, ECF No. 161, and Defendants did the same, ECF No. 162. These supplemental filings include exhibits and affidavits.

In their objection, Defendants object to the Recommendation's lack of a proposed finding of fact. Fed. R. Civ. P. 72(b)(1) states that the "magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." As explained below, the Court agrees that the diversity analysis is a fact-intensive inquiry. *ADA Carbon Sols. (Red River), LLC v. Atlas Carbon, LLC*, 146 F.4th 1296, 1303 (10th Cir. 2025) ("citizenship of the parties is to be determined with reference to the facts"). However, the Court also finds the Recommendation included findings of fact in its analysis. *See* ECF No. 171 at 7-16. For the purposes of completeness, the Court includes the "Background" section of this Order to address this particular objection from the Defendants.

**B. Background on Complete Diversity**

The Recommendation accurately and thoroughly sets forth the standard for analyzing diversity jurisdiction in this circuit. ECF No. 171 at 4-8. Thus, the Court need only briefly address the legal framework for its analysis. "Congress has authorized the federal district courts to exercise jurisdiction over certain cases between citizens of different states." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (citing 28 U.S.C. § 1332(a)(1)). Such diversity jurisdiction "requires complete diversity, meaning that no plaintiff may be a citizen of the same state as any defendant." *ADA Carbon*, 146 F.4th at 1303 (citations omitted). The party seeking to invoke federal jurisdiction bears

the ultimate burden of establishing complete diversity by a preponderance of the evidence. *Id.* at 1306; *see also Middleton*, 749 F.3d at 1200. In this case, Plaintiffs argue complete diversity exists and, thus, bear the burden of demonstrating it.

"For purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *ADA Carbon*, 146 F.4th at 1303 (citation omitted). "When assessing the citizenship of a person, we look to the individual's domicile," which is "established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Id.* (citations omitted). When assessing citizenship of entities, we look to the "citizenship of all the entity's members." *Id.* at 1304. If the entity consists of entity members, then the plaintiff must identify "those members' citizenship, tracing through however many layers necessary to reach either a corporation or a natural person." *Id.*

When determining a person's domicile, "a district court should consider the totality of the circumstances," which includes "any number of factors [that] might shed light on the subject in any given case." *Middleton*, 749 F.3d at 1200-01. Relevant factors include "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity." *Id.* at 1201. While declarations of intention to establish residence in a particular location are entitled great weight in the determination of domicile, "they should be viewed in the light of the motive which

prompted them." *Townsend v. Bucyrus-Erie Co.*, 144 F.2d 106, 109 (10th Cir. 1944). "[A]n unguarded course of conduct is more significant in the ascertainment of domicile or residence." *Id.*

"It has long been the rule that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006) (citing *Mullan v. Torrance*, 22 U.S. 537, 539 (1824)). Here, the parties agree that the dates for the diversity analysis are **February 5, 2025, and April 17, 2025**, as the respective dates Defendant FTM Wealth, PLLC and Defendant FTM Wealth LLC were added as parties in this case. ECF Nos. 158-59; ECF No. 161 at 8; ECF No. 162 at 4.

Defendants filed Corporate Disclosure Statements for Defendant FTM Wealth LLC (ECF No. 158) and Defendant FTM Wealth, PLLC (ECF No. 159). The FTM Wealth LLC's disclosure statement indicates that LesSept LLC, a Texas limited liability company, is a member of FTM Wealth LLC, and that the five Ott children and Gavriel, LP are members of LesSept LLC. ECF No. 158 at 3. Gavriel, LP's sole member is Magen LLC, and Magen's sole member is a citizen of Texas. *Id.* The limited partners of Gavriel, LP are Dr. Ott and Defendant Ott. *Id.* Thus, the ultimate citizenship of FTM Wealth LLC depends on the citizenship of the Ott family on April 17, 2025.

The FTM Wealth, PLLC disclosure statement states that its sole member is Terah Ott. ECF No. 159 at 4. Therefore, the citizenship of FTM Wealth, PLLC depends on Defendant Ott's citizenship on February 5, 2025. Considering all of this, the Court must

determine (1) the citizenship of the Ott family on April 17, 2025; and (2) the citizenship of Defendant Ott on February 5, 2025.

**C. Citizenship of Defendant Ott, Doctor Ott, and the Ott Children**

Plaintiffs seek to invoke diversity jurisdiction, and thus bear the burden of establishing, complete diversity. They have provided evidence that both Dr. Ott and Defendant Ott are registered to vote in Texas and have Texas driver's licenses. Plaintiffs have also demonstrated that Dr. Ott (1) has vehicles registered to Texas, (2) filed his 2024 taxes with a Texas address, and (3) frequently works in Texas. While these factors—voter registration, driver's licenses, vehicle registrations, payment of taxes, and location of work—are all relevant in determining domicile, the Tenth Circuit has explained that no one factor is dispositive. "It's an all-things-considered approach, and any number of factors might shed light on the subject in any given case." *Middleton*, 749 F.3d at 1201. Therefore, the Court must consider the totality of the circumstances, including the course of conduct and declarations of Defendant Ott and Dr. Ott. Further, the Court must look to the Ott family's physical presence in a place along with their "state of mind" concerning their intent to remain there. *See ADA Carbon*, 146 F.4th at 1303.

**a. The Ott Children**

The Recommendation and the parties all agree that the citizenship of the Ott children follows that of their parents. ECF No. 171 at 8-9 (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is

determined by that of their parents.”)). Thus, the Court will focus its attention on the citizenship of Defendant Ott and Dr. Ott.

**b. Doctor Nathaniel Ott**

Defendant Ott and Dr. Ott’s declarations detail their various moves and Dr. Ott’s military tours between 2023 and 2025. The declarations provide insight into the reasons behind and intentions for each move. To be sure, the Court is mindful of the potentially self-serving aspect of Defendant Ott and Dr. Ott’s declarations in this case. However, these declarations confirm that the Otts have owned their Boulder home since 2020. Additionally, Dr. Ott represented to the Air Force, Veteran Affairs, and his employer at the Flint Medical Staffing that he lived in Colorado. These facts demonstrate Dr. Ott’s intent to remain in Colorado, even though work and military obligations took him elsewhere.

Magistrate Judge Neureiter lists seven factors to support his recommendation that Dr. Ott’s citizenship on February 5, 2025 was in Texas. ECF No. 171 at 15. The factors include Dr. Ott’s voter registration in Texas, Texas driver’s license, home ownership in Dallas, Texas vehicle registration, professional license registrations listing a Texas address, and 2024 tax return including his Texas address. *Id.* Indeed, Texas law requires “qualified voters” to be residents of Texas. ECF No. 155-1 at 36 (citing V.T.C.A., Election Code § 11.002). Thus, Doctor Ott was undoubtedly a Texas citizen when he first registered to vote there in 2017. However, the Court is not persuaded that these demonstrate his intent to stay in Texas. Dr. Ott’s declaration explains that the combination of his travel for work and his need for a new license prompted the recent renewal of his Texas driver’s license. Additionally, the family’s constant relocation between 2023 and

2024 between Colorado, Arizona, Texas, back to Colorado—with Dr. Ott's military tour in Hawaii—explain Dr. Ott's desire to simplify his various registrations and tax filings by using the Texas address. Convenience, not an intention to remain in Texas, motivated Dr. Ott to keep his registrations and tax filings in Texas. When determining Dr. Ott's intent, the Court places greater weight on the fact that Dr. Ott enrolled his children in Boulder schools in January 2025 and represented to the military and his employer at the Flint Medical Staffing that he was a resident of Boulder in mid- to late-2024. To this Court, these facts, along with the family's physical presence in Boulder during early 2025,, establish Dr. Ott's intent to live in and remain in Colorado in early 2025.

**c. Defendant Terrah Ott**

For many of the same reasons, the Court also finds that Defendant Ott was a citizen of Colorado during the relevant time period. She and the Ott children moved back into their Boulder home in December 2024, and the Ott children have been enrolled in Boulder schools since January 2025. Like Magistrate Judge Neureiter, the Court is mindful of the fact that Defendant Ott's original position was that she was a citizen of Texas when this suit was filed. ECF 171 at 9. However, Defendant Ott explains her prior representation of Texas citizenship was based on her mistaken understanding that she could "pick and choose which state's citizenship to identify with." ECF No. 162-1 at 6. As Magistrate Judge Neureiter points out, there is authority on both sides of the parties' disagreement on whether Defendant Ott's representations can be deemed binding judicial admissions as to her citizenship. ECF No. 171 at 12. Magistrate Judge Neureiter determined that he need not decide the issue, because Defendant Ott's admissions,

"coupled with the fact that Ms. Ott has a Texas, not Colorado, driver's license, and is registered to vote in Texas, leads the Court to conclude that, considering the totality of the circumstances, a preponderance of the evidence shows that Ms. Ott was domiciled in Texas as of February 5, 2025." *Id.* at 12-13.

The Court agrees with Magistrate Judge Neureiter in that these factors weigh in favor of finding Defendant Ott has Texas citizenship. However, for the same reasons described above with respect to Dr. Ott, these factors are outweighed by the objective course-of-conduct evidence presented by Defendants. The Court cannot simply ignore the acknowledged facts. The Court places greater weight on Defendant Ott's decision to enroll her children in Boulder schools a month before the filing of this suit. To this Court, this decision, along with Defendant Ott's move back into their Boulder home, demonstrates her intent to keep her residence in Colorado. Considering the totality of the circumstances, the Court finds that Plaintiffs have failed to establish by a preponderance of the evidence that complete diversity exists.

As a final note, the Court is mindful of Defendant Ott's seemingly opportunistic maneuver in changing her proclaimed citizenship to destroy complete diversity. Indeed, deliberate conduct to destroy complete diversity can violate federal laws, such as 28 U.S.C. § 1447(e) prohibits joinder of defendants that would destroy subject matter jurisdiction. While the circumstances in this case do not appear to violate § 1447(e), the Court is not oblivious to Defendants' sudden change in citizenship position. Given this potentially vexatious conduct, Plaintiffs may file a motion for sanctions under 28 U.S.C. § 1927 by **October 14, 2026**. Section 1927 provides that "[a]ny attorney . . . who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1201 ("Section 1927 targets the vexatious and unreasonable multiplication of proceedings.").

Ultimately, the Court must carefully scrutinize citizenship in order not to exceed its jurisdictional limits. In this case, the Court agrees with the entirety of the Recommendation's legal framework and the majority of its analysis. However, this Court's "totality of the circumstances" analysis resulted in the opposite conclusion. Thus, the Court respectfully disagrees with the ultimate conclusion of the Recommendation, and Defendant's Motion to Dismiss is GRANTED.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Defendants' Objection to the Recommendation, ECF No. 179, is SUSTAINED and the Recommendation, ECF No. 171, is OVERRULED;
2. Defendants' Motion to Dismiss the Third Amended Complaint for Lack of Subject Matter Jurisdiction, ECF No. 146, is GRANTED;
3. Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE;
4. Counterclaimants' claims are DISMISSED WITHOUT PREJUDICE for lack of an independent basis of federal subject-matter jurisdiction;
5. Given the Court's ruling, the parties' pending Motions are each DENIED AS MOOT; and

6. Should Plaintiffs wish to file a Motion for Sanctions under 28 U.S.C. § 1927, the motion must be filed by **October 15, 2026**.

DATED: September 15, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge